IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CHAMARA VAUGHN**                                                                                              **PLAINTIFF**

**V.**                                                 **CIVIL ACTION NO. 1:09-CV-00136-SA-JAD**

**MISSISSIPPI DEPARTMENT OF MENTAL HEALTH**             **DEFENDANT**

**MEMORANDUM OPINION**

Before the Court is Defendant's Motion for Summary Judgment [29]. For the reasons stated below, the motion is granted.

**I. BACKGROUND**

Plaintiff, Chamara Vaughn, filed this action under Title VII, 42 U.S.C. § 2000e, *et seq.*, alleging race discrimination and retaliation by her former employer, Mississippi Department of Mental Health ("MDMH").[1] Plaintiff was hired by MDMH in June of 2004, and was assigned to the Corinth Crisis Intervention Center as a Mental Health Technician. Her basic duties were to observe patients every fifteen minutes, help with hygiene and cleaning, and supervise their activities. On June 27, 2008, Plaintiff was placed on administrative leave, and she was soon after given a pre-termination notice. MDMH stated the following for such administrative leave: sleeping on duty,

---

[1] Plaintiff's Amended Complaint also alleged a violation of 42 U.S.C. § 1981. However, Plaintiff has conceded her claims under Section 1981 in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment. Therefore, this Memorandum addresses only Plaintiff's Title VII claims.

abuse of state time, and insubordination. Plaintiff was terminated from her employment on July 15, 2008.

In 2004, Plaintiff alleges that an incident occurred regarding her work attire. Plaintiff asserts that she was instructed to wear jeans and a t-shirt to work until she could buy scrubs. Plaintiff states that, despite wearing what she was advised to, she was nonetheless reprimanded and eventually sent home based on her work attire. Also, in 2004, Plaintiff was reprimanded for reading magazines and sitting in her car during breaks. After this reprimand, Plaintiff alleges that Terry Harvell, Plaintiff's supervisor, told her that she has to play the "'yes, sir, Master' game with these white people." Plaintiff also claims that Dr. Steen's secretary, Judy Smith, told Plaintiff that she was a "political hire."[2]

On September 21, 2007, Plaintiff was reprimanded for absenteeism. Plaintiff claims that her absences were approved by her nurse supervisor. Neither Plaintiff's duties nor pay were altered in any manner due to such reprimands. On June 20, 2008, Plaintiff was again reprimanded during a meeting with Dr. Steen, Terry Harvell, and Greg Sappington, MDMH's human resources representative, for insubordination for allegedly "being loud" with a patient. During this meeting, Plaintiff voiced her opinions regarding discrimination to Dr. Steen, and she subsequently states that she contacted her state senator about such alleged discrimination. Plaintiff claims that she told other employees that she contacted the senator; however, Plaintiff states that she did not tell anyone about this until after she was placed on administrative leave. On June 26, 2008, Plaintiff was found sleeping at work during her shift. Plaintiff's pre-termination notice states that she was observed

---

[2] Plaintiff is unsure of the exact date the "political hire" statement was made to her. Plaintiff states that she believes the statement was made sometime in 2007.

sleeping from 1:45 a.m. until 4:30 a.m. Plaintiff admits to sleeping during her shift but disputes the length of time she was sleeping, although asserting she does not know how long she was actually asleep. The following day, Plaintiff was placed on administrative leave and eventually terminated.

Plaintiff filed this suit on May 19, 2009. MDMH filed its Motion for Summary Judgment on June 15, 2010, arguing it is entitled to judgment as a matter of law on Plaintiff's Title VII claims for race discrimination and retaliation.

## II. DISCUSSION

*A.     Summary Judgment Standard*

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT & T Corp., 314 F. App'x 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

### B. *Title VII*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff has asserted that Defendant (1) discriminated against her because of her race, and (2) retaliated against her due to her complaints about discrimination and her EEOC charge.

#### 1. *Racial Discrimination*

Plaintiff alleges that her termination was improperly based on racial discrimination. Plaintiff offers no direct proof of discrimination in this case, instead seeking to prove her case circumstantially based on the standards set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the McDonnell Douglas standard, Plaintiff must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the

4

position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okote v. Univ. of Tex. Houston Health Sci. Ctr., 225 F.3d 507, 513 (5th Cir. 2001). Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). "To raise an inference of discrimination, the plaintiff may compare [her] treatment to that of nearly identical, similarly situated individuals." Id.

Once a plaintiff has made her prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578

(quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

Whether summary judgment is appropriate in a Title VII case "depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case

and that properly may be considered.'" Price, 283 F.3d at 720 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. 2097). Further, "[t]he plaintiff always has the . . . ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Warren v. City of Tupelo, 332 F. App'x 176, 180 (5th Cir. 2009) (punctuation omitted) (quoting Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

      a.     Plaintiff's Prima Facie Case

In the case at hand, Plaintiff is an African-American employed, prior to her termination, as a Mental Health Technician with the Corinth Crisis Intervention Center. Although she was reprimanded by Defendant on a few occasions, Plaintiff met the Defendant's minimal expectations based on her performance reviews. Plaintiff worked for the Defendant for over four years. Plaintiff was placed on administrative leave on June 27, 2008, and was eventually terminated on July 15, 2008. An African-American woman was transferred into the position formerly held by Plaintiff.

Since Plaintiff cannot show that she was replaced by someone outside of her protected class, Plaintiff must prove the fourth element of her prima facie case by showing that she was treated less favorably than similarly situated employees not in her protected class. Plaintiff attempts to do this through circumstantial evidence of disparate treatment. First, Plaintiff relies on a comment made by Terry Harvell in 2004, telling her that she must play the "yes, Master, game." In addition, Plaintiff relies on a comment made by Dr. Steen's secretary, stating that Plaintiff was a "political hire."

In regards to workplace remarks, the Fifth Circuit has explained that "'comments that are vague and remote in time are insufficient to establish discrimination.'" Spears v. Patterson UTI

Drilling Co., 337 F. App'x 416, 420 (5th Cir. 2009) (quoting Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996)). Here, the comment allegedly made by Terry Harvell is not only remote in time, being made in 2004, but it is also ambiguous. In Spears, the Fifth Circuit found that a supervisor's statement that he "no longer disliked African Americans" was too vague to imply any racial animus prior to the statement being made. Spears, 337 F. App'x at 420. Other comments in Spears that were found insufficient to show discriminatory intent included "the use of the term 'mayates,' which is Spanish slang for dark skinned people and means dung beatle." Id. at n.3. Further, the plaintiff in Spears alleged that he was ridiculed for dressing like a "gangster," for displaying "ghetto" habits, and for allegedly being told that it was "bad luck to have blacks on a rig." Id.

The single alleged comment in this case made by Terry Harvell four years prior to Plaintiff's termination is insufficient to infer racial animus. See Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991), *cert. denied*, 503 U.S. 908, 112 S. Ct. 1267, 117 L. Ed. 2d 495 (1992) (statements made one year before demotion held too vague and remote in time to establish discrimination); see also Tillman v. S. Wood Preserving of Hattiesburg, Inc., 2010 U.S. App. LEXIS 9181, at *6 (5th Cir. May 4, 2010) (affirming district court's dismissal of all claims based on events occurring more than 180 days prior to filing of EEOC charge). Further, the single statement made by Dr. Steen's secretary is also insufficient as it was allegedly made around a year before Plaintiff was terminated, it is likewise vague under Fifth Circuit precedent, and it was not made by an individual with decision-making authority. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225-27 (5th Cir. 2000) (citing with approval Judge Posner's "cat's paw" analysis and stating that while "courts will not blindly accept the titular decisionmaker as the true

decisionmaker," "[t]he value of [discriminatory] remarks is dependent upon the content of the remarks and the speaker."). Dr. Steen's secretary (who was at times apparently also a Mental Health Technician with Plaintiff) was not principally responsible for Plaintiff's termination. Further, Plaintiff did not present evidence that could lead a rational jury to find that the secretary "possessed leverage, or exerted influence," over Dr. Steen or others involved in making the decision to terminate Plaintiff. Id. at 227. These "stray remarks" by Harvell and Dr. Steen's secretary are thus insufficient to meet Plaintiff's prima facie burden. Sreeram v. Louisiana State Univ. Med. Ctr. - Shreveport, 188 F.3d 314, 320 (5th Cir. 1999).

Plaintiff also relies on other events occurring during her tenure as an employee for the Defendant to prove race discrimination. Plaintiff alleges that she was sent home the first day of work due to her work attire, despite wearing what she was allegedly told to wear. However, Plaintiff offers no evidence that her being sent home was motivated by racial animus. In addition, this alleged event occurred four years prior to Plaintiff's termination. See Tillman, 2010 U.S. App. LEXIS 9181, at *6 (5th Cir. May 4, 2010) (affirming district court's dismissal of all claims based on events occurring more than 180 days prior to filing of EEOC charge). Plaintiff also relies on a series of reprimands and conferences she had with supervisors, including Dr. Steen, regarding alleged absenteeism, sitting in her car during her break, reading magazines while at work, and insubordination. Plaintiff alleges that these conferences are discriminatory because similarly situated Caucasian individuals were not reprimanded for similar behavior. However, according to the Defendant's records, seven Caucasian employees received similar or the same disciplinary actions for behavior, abusive language, being argumentative, or insubordination; three Caucasian employees received disciplinary action for attendance and/or

absenteeism; and one other Caucasian employee received discipline for her dress. All of these disciplinary actions occurred while the Plaintiff was employed with the Defendant. In addition, neither Plaintiff's duties nor pay were altered due to the conferences. Plaintiff further claims that it was discriminatory to not let her work with an African-American co-worker. However, Plaintiff presents no evidence this was based on race. Instead, Plaintiff actually states that the decision not to put these co-workers on the same shift was based on her friendship and her "having a good time like friends do at work" with this particular co-worker.

Lastly, Plaintiff alleges that her termination was based upon discriminatory intent because others similarly situated, yet outside of the protected class, were not terminated for sleeping while at work. Plaintiff admits to sleeping during her shift, and she admits that the disciplinary action for sleeping at work is termination. It is also undisputed that Caucasian individuals were terminated for sleeping in 2005.[3] Plaintiff cites to other Caucasian individuals who were allegedly sleeping at work and were either not reported or not terminated. While Plaintiff asserts such individuals slept during their shifts, and that it was common to sleep at work, there is no evidence, other than Plaintiff's conclusory allegations in her own deposition that the nurses witnessed others sleeping and either did not report them or they were not fired. Furthermore, Plaintiff relies strongly on the fact that another Caucasian employee, Eric Russell, was once caught sleeping by Dr. Steen and was not terminated. Plaintiff, while admittedly having no

---

[3] Plaintiff, in its Brief in Opposition to Defendant's Motion for Summary Judgment, asserts that summary judgment is improper because a jury could find that the Defendant only terminated these Caucasian employees because they were sleeping on the same shift. Viewing this in the light most favorable to the Plaintiff, even assuming a juror could infer this, such evidence does not create any inference that Plaintiff was terminated due to racial animus.

personal knowledge of this incident, asserts that a nurse on shift allegedly told her that Russell was sleeping for hours and caught by Steen. Dr. Steen admits to discovering Russell sleeping and not immediately terminating him; however, she testified that she based her decision not to fire Mr. Russell solely based on the fact that he had only just dozed off momentarily after being up all day with a sick child. Russell appears to be the only individual that Dr. Steen knew was sleeping at work who was not terminated.

Assertions that a single Caucasian man was caught sleeping on the job and was not terminated due to reasons unrelated to his race and blanket allegations, supported by nothing other than Plaintiff's deposition testimony, that others also slept on the job, cannot alone establish a prima facie case of race discrimination, especially given Defendant's records showing that Caucasians were terminated for that very reason. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 807 (5th Cir. 2007) (finding that the plaintiff had not demonstrated she was treated more harshly than other employees and commenting on the fact that the plaintiff's claim was "supported solely by her own self-serving affidavit"); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000) (refusing to rely upon a plaintiff's subjective belief as to discriminatory intent).

      b.     Defendant's Legitimate, Nondiscriminatory Reason

Assuming, however, that Plaintiff can establish a prima facie case, Defendant is required to produce a legitimate, nondiscriminatory reason for Plaintiff's termination. In this case, the Defendant's stated reason for Plaintiff's termination is the fact that she slept during her shift at work, a "Group III" offense and against Defendant's policy. Defendant's reason satisfies the

burden of production.

    c.    <u>Pretext</u>[4]

To show pretext on summary judgment, Plaintiff must produce "substantial evidence" indicating that Defendant's reasoning is pretext for discrimination. <u>Laxton</u>, 333 F.3d at 578. Here, Plaintiff relies in part on the same evidence presented for her prima facie case in order to show that the Defendant's stated reason is pretext. As discussed above, the two comments made to Plaintiff are too vague and remote in time, and the reprimands that Plaintiff received are not probative of pretext, especially given that other Caucasian employees were disciplined for the same or similar conduct. Further, with the exception of Russell, whom the Defendant admitted was not terminated, Plaintiff presents no evidence, other than bare and uncorroborated allegations, that others outside of her protected class were caught sleeping and either not reported or not terminated. Additionally, there is no evidence that Russell was not terminated due to any reason other than Dr. Steen's belief that he only slept momentarily and had been up all day with a

---

[4] In this case, Plaintiff relies *solely* on a "pretext" theory. Under this "third step" of the burden-shifting framework, Plaintiff, "instead of arguing pretext, . . . could have proceeded under a 'mixed-motive' theory." <u>Arey v. Watkins</u>, 2010 WL 2764731, at *3 n.2 (5th Cir. July 14, 2010). In the Fifth Circuit, it appears to be incumbent upon a plaintiff to actually raise mixed-motive arguments in order to have them considered at the summary judgment stage. See <u>Septimus v. Univ. of Houston,</u> 399 F.3d 601, 607 n.7 (5th Cir. 2005) (refusing to consider whether the Supreme Court's decision in <u>Desert Palace</u>, 539 U.S. 90, 123 S. Ct. 2148 or the Fifth Circuit's decision in <u>Rachid</u>, 376 F.3d 305, would affect the case because the parties relied on pretext rather than mixed motive); <u>Strong v. Univ. HealthCare Sys., L.L.C.</u>, 482 F.3d 802, 805 (5th Cir. 2007) (applying "but for" causation standard on summary judgment in retaliation case where plaintiff had relied solely on a pretext theory); <u>Vaughner v. Pulito</u>, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and *cannot be considered* or raised on appeal") (emphasis added); <u>Arey</u>, 2010 WL 2764731, at *3 n.2 (citing <u>Vaughner</u>, 804 F.2d at 877 n.2 and finding that the plaintiff's mixed-motive theory was "waived" because plaintiff "did not raise such a theory in the district court.").

sick child. "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." LeMaire v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007).

Plaintiff also apparently attempts to show pretext through the use of statistics. Plaintiff states that there are a "low number of black employees" and "none in a supervisory or managerial capacity." Statistical evidence may be used in a disparate treatment case "to show that an employer's justification for a discriminatory act is pretext." Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1137 (5th Cir. 1983). However, the Supreme Court has made clear that "[t]he probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." See Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 340, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977).

Plaintiff makes this statistical argument in response to Defendant's claim that an inference of nondiscrimination arises since the same individual that hired Plaintiff is also the same individual that terminated Plaintiff. The Fifth Circuit has recognized this "same actor inference," which allows a court to infer a lack of discrimination from the fact that the same individual both hired and terminated the plaintiff employee. Spears, 337 F. App'x at 421-22.

Here, Dr. Steen both hired Plaintiff and terminated Plaintiff. Therefore, an inference that the decision was not motivated by racial animus arises. Plaintiff has not rebutted this inference. Moreover, even if this inference did not exist, Plaintiff's statement, without more explanation, that Defendant employs a low number of African-Americans does not in itself show pretext. See Deloach v. Delchamps, Inc., 897 F.2d 815, 818-20 (5th Cir. 1990) (only when coupled with other evidence contradicting employer's reason was statistical evidence probative of pretext). While

statistical evidence could be relevant in this case, bare allegations and numbers alone without more context provided are not sufficient. See Baker v. Randstad North America, L.P., 151 F. App'x 314, 320 (5th Cir. 2005) (finding that "it is extraordinarily rare that raw numbers can insulate a plaintiff from summary judgment"); E.E.O.C. v. Texas Instruments, Inc., 100 F.3d 1173, 1185-86 (5th Cir. 1996) (affirming the district court's order granting summary judgment to the employer and rejecting the plaintiff's contention that statistical evidence was probative of pretext).

Given the relative weakness of Plaintiff's prima facie case, the fact that she was replaced by an African-American employee, the strength of Defendant's nondiscriminatory reason, and the lack of proof that the employer's explanation is false, this Court finds that Plaintiff's evidence is not "so persuasive as to support an inference that the real reason [for Plaintiff's termination] was discrimination." Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir. 2000). Therefore, Defendant's Motion for Summary Judgment is granted as to Plaintiff's Title VII claim of racial discrimination.

    *2.*    *Retaliation*

Plaintiff also alleges that her termination constitutes retaliation in violation of Title VII. A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534

F.3d 473, 484 (5th Cir. 2008). If the employer satisfies its burden of production, the plaintiff must prove that the employer's proffered legitimate, nondiscriminatory reason is pretext for a retaliatory purpose. Id. In doing so, the plaintiff must prove that "the adverse employment action taken against [her] would not have occurred 'but for' her protected conduct." Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005); see also Long v. Eastfield College, 88 F.3d 300, 304 n.4 (5th Cir. 1996) ("ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision") (citing McDaniel v. Temple Indep. Sch. Dist., 770 F.2d 1340, 1346 (5th Cir. 1985)).

However, recently, the Fifth Circuit applied the reasoning of Desert Palace to Title VII retaliation claims, thus providing plaintiffs with another avenue, other than just pretext, to prove retaliation. See Smith, 602 F.3d at 332. Accordingly, a Title VII plaintiff - whether asserting discrimination or retaliation claims - may now rebut a defendant's legitimate, nondiscriminatory reason for an adverse employment action by proving that "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Davis v. Farmers Ins. Exch., 2010 U.S. App. LEXIS 7130, at *5 (5th Cir. Apr. 6, 2010).

      a.    Plaintiff's Prima Facie Case

In this case, Plaintiff claims that she was retaliated against for complaining to Defendant about her belief of discrimination, for contacting her elected representative to complain of discrimination, and for filing a charge with the EEOC. The Court finds that Plaintiff satisfies the first and second elements of her prima facie case. Plaintiff expressed her concerns to Dr. Steen

and others, including her senator, about alleged discrimination. Plaintiff also filed charges with the EEOC. Plaintiff's complaints constitute protected activity. 42 U.S.C. § 2000e-3(a) (2001) (protected activity is defined as opposition to any practice rendered unlawful by Title VII). Moreover, Plaintiff's termination qualifies as an adverse employment action.

As for the third prong of her prima facie case, "a plaintiff need not prove that [her] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." Evans v. City of Houston, 246 F.3d 344, 353 (5th Cir. 2001); see also Montemayor v. City of Antonio, 276 F.3d 687, 692 (5th Cir. 2001) (the causation showing at the prima facie stage is much less stringent than the "but for" standard). The temporal proximity between an employee's protected activity and an adverse employment action may provide insight into the existence of a causal link. See Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997), *cert. denied*, 522 U.S. 948, 118 S. Ct. 366, 139 L. Ed. 2d 284 (1997). In Clark County School District v. Breeden, the Supreme Court noted that "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). The Fifth Circuit also considers other factors in determining a causal link, such as the employee's past disciplinary record and whether the employer followed its typical policy and procedures. See Nowlin v. Resolution Trust Corp., 333 F.3d 498, 508 (5th Cir. 1994).

Here, temporal proximity alone may be sufficient to establish Plaintiff's prima facie case of retaliation. Plaintiff was called in for a conference and reprimanded for insubordination on

June 20, 2008. At this time, Plaintiff voiced her beliefs of discrimination to Dr. Steen.[5] After Plaintiff's meeting on June 20, Plaintiff claims she contacted her state senator. On June 27, 2008, Plaintiff was placed on administrative leave after being found sleeping at work. Plaintiff filed a race discrimination charge with the EEOC on July 7, 2008. Plaintiff was subsequently terminated on July 15, 2008. Plaintiff then, in September of 2008, filed a charge of retaliation with the EEOC. Plaintiff alleges that this temporal proximity is close enough in time to establish the third element of a prima facie case.

Moreover, Plaintiff's disciplinary record illustrates that Plaintiff was reprimanded on several occasions dating back to the beginning of her employment. Plaintiff claims this strengthens her claim because other Caucasian employees were allegedly not treated the same for similar conduct. However, as discussed above, Plaintiff proffers no substantiated proof of this, and Defendant's records prove just the opposite.

The Court will assume that the temporal proximity between Plaintiff's complaints of discrimination and her termination can alone establish a prima facie case of retaliation; therefore, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason.

                b.      <u>Defendant's Legitimate, Nondiscriminatory Reason</u>

The Defendant's legitimate, nondiscriminatory reason is again the fact that Plaintiff was sleeping during her shift at work. This reason satisfies Defendant's burden of production.

---

[5] Plaintiff also claims she expressed her opinions regarding discrimination before this; however, specific dates are not provided.

c. Pretext [6]

In this case, Plaintiff presents no new evidence of pretext under her retaliation case. Instead, Plaintiff states that the same pretext analysis that applies to her racial discrimination claim likewise applies to her retaliation claim. As discussed above, Plaintiff's unsupported allegations do not establish pretext of racial discrimination. Along the same lines, they also do not establish pretext of retaliation, as there is no evidence Defendant acted based on any of Plaintiff's complaints. Thus, the only new evidence the Court will consider here is temporal proximity.

Unlike the third element of a prima facie retaliation claim, when a plaintiff attempts to prove pretext, the plaintiff must prove that "the adverse employment action taken against [her] would not have occurred '*but for*' her protected conduct." Septimus, 399 F.3d at 608 (emphasis added). Further, the plaintiff may not rely only on close temporal proximity to meet this but-for pretext test. See Strong, 482 F.3d at 808 (finding that "temporal proximity alone is insufficient to prove but for causation . . . [because] [s]uch a rule would unnecessarily tie the hands of employers.").

---

[6] Here, again, Plaintiff *only* discusses a "pretext" analysis. As discussed above, in March 2010, the Fifth Circuit held that mixed motive does indeed apply to retaliation cases. See generally Smith, 602 F.3d 320. However, the Smith case involved a jury instruction after the case was tried, and post-Smith cases demonstrate that it did not disturb the familiar McDonnel Douglas "pretext" analysis or a plaintiff's burden to raise mixed motive *at the summary judgment stage.* See Magiera v. City of Dallas, 2010 WL 3168211, at *2 (5th Cir. Aug. 11, 2010) (citing Septimus, 399 F.3d 601, where the Fifth Circuit refused to consider how mixed motive would affect the case because the parties relied on pretext, and noting that a plaintiff must prove that the "adverse employment action . . . would not have occurred 'but for' her protected conduct"); Brooks v. Lubbock Cnty. Hosp. Dist., 2010 WL 1439109, at *3 (5th Cir. Apr. 12, 2010) (dismissing plaintiff's retaliation claim for failure to prove pretext). Arey v. Watkins, 2010 WL 2764731, at *3 n.2 (5th Cir. July 14, 2010) (not considering the plaintiff's mixed-motive arguments because they were not raised in the district court at the summary judgment stage).

Here, the only new evidence presented of pretext under Plaintiff's retaliation claim is such temporal proximity. While this alone cannot establish but-for causation, in the case at hand, such proximity is not probative enough of a retaliatory motive even if it could establish pretext. Plaintiff admits that she did not tell anyone about her contacting her elected representative until *after* she was placed on administrative leave for sleeping while at work.[7] Moreover, Plaintiff's employer was already considering Plaintiff's termination as of the date of her administrative leave, June 27, and Plaintiff did not file her EEOC racial discrimination charge until July 7.[8] In Clark County v. Breeden, the plaintiff was transferred to a new position only one month after filing a lawsuit, and her retaliation claim relied solely on this temporal proximity. 532 U.S. at 271-72, 121 S. Ct. 1508. The evidence showed, however, that plaintiff's transfer was contemplated by the manager before he knew about the suit. Id. at 272. The Supreme Court held that employers "need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet

---

[7] While Plaintiff correctly highlights that there is close temporal proximity between Plaintiff's June 20 meeting with Dr. Steen and Plaintiff's placement on administrative leave on June 27, Plaintiff fails to highlight that in the interim between these two dates, she was found sleeping at work. Therefore, while this proximity is certainly probative, it does not alone demonstrate pretext. As noted in Strong, such a rule "would unnecessarily tie the hands of employers." 482 F.3d at 808 (noting also that "[e]mployers are sometimes forced to remove employees who are . . . engaging in improper work conduct. This is especially true for hospitals providing serious medical care to patients. Precedent does not prevent a hospital from removing such an employee simply because the employee engaged in a protected work activity months prior.").

[8] When Plaintiff was placed on administrative leave, she was given a Pre-Termination Notice, informing her that "termination of your employment is being considered" and that "a decision will be made which could result in the termination of your employment." Such evidence establishes that Plaintiff's employer was indeed considering Plaintiff's termination as of the date she was placed on administrative leave and before her EEOC charge.

definitively determined, is no evidence whatever of causality." Id.; see also McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007) (finding that the plaintiff's attempt to show pretext by showing that her employer knew of her complaints and took an adverse employment action shortly thereafter failed). Under Clark County, Defendant need not have ceased its disciplinary procedures upon learning of Plaintiff's EEOC charge.

Plaintiff's evidence is legally insufficient to establish that Defendant's legitimate, nondiscriminatory reason was pretextual. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's Title VII retaliation claim is granted.

### III. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Title VII discrimination and retaliation claims stemming from Plaintiff's termination.

So ordered on this, the _20th__ day of September, 2010.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**